IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

STANLEY SPANGLER, as Special )
Administrator on behalf of the Estate )
of Reba Spangler (deceased), )
 )
              Plaintiff, )
 )
vs. )     No. 07-CV-418-JHP
 )
 )
STATE FARM MUTUAL )
AUTOMOBILE INSURANCE )
COMPANY, )
 )
              Defendant. )

## **ORDER AND OPINION**

Before the Court is Defendant State Farm Mutual Automobile Insurance Company's Motion for Summary Judgment (Docket No. 14). For the reasons set forth below, the motion is GRANTED.

## **BACKGROUND**

**A.**     **Factual Background**

On October 26, 2002, Reba Spangler was shopping for a pickup truck for her son at a car dealership in Sallisaw, Oklahoma. Assisting her was a salesman from the dealership named Jimmy Nunn. As Ms. Spangler stood by the passenger's side window of a particular truck she was interested in, and as Nunn stood by the driver's side window reading information from the truck's "sticker," a pickup truck pulled up behind Ms. Spangler and stopped. Daniel Hawke Fears stepped out of the truck with a shotgun and shot Ms. Spangler in the back of the head. Fears then shot Nunn in the chest. As Nunn turned to escape, Fears shot Nunn again, this time in the back. Fears then

1

walked back to his pickup, placed the shotgun on the seat, climbed into his truck, and drove away. Nunn survived the attack. Ms. Spangler did not.

Fears was ultimately apprehended and found guilty of first degree murder and was sentenced to life in prison. On appeal, that conviction was reversed to "not guilty by reason of insanity."

At the time of the attack, Ms. Spangler was an Arkansas resident. Ms. Spangler had a policy for automobile insurance with Defendant State Farm Mutual Insurance Company which she executed in Arkansas. The policy included uninsured motorist coverage:

> We will pay damages for **bodily injury** an **insured** is legally entitled to collect from the owner or driver of an **uninsured motor vehicle**. The **bodily injury** must be sustained by an **insured** and caused by an accident arising out of the operation, maintenance, or use of an **uninsured motor vehicle**.

(Docket 14-8 at 15).[1]

**B.     Procedural History**

On October 24, 2007, Stanley Spangler, as special administrator on behalf of the Estate of

---

[1]This recitation of the facts is taken primarily from the "Statement of Undisputed Material Facts" contained within State Farm's Motion for Summary Judgment (Docket No. 14 at 2). The Estate has not disputed any of those numbered factual assertions in compliance with Local Rule 56.1(c), which states:

> The response brief in opposition to a motion for summary judgment (or partial summary judgment) shall begin with a section which contains a concise statement of material facts to which the party asserts genuine issues of fact exist. Each fact in dispute shall be numbered, shall refer with particularity to those portion of the record upon which the opposing party relies and, if applicable, shall state the numbered paragraphs of the movant's facts that are disputed. All material facts set forth in the statement of the material facts of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of material facts of the opposing party.

LcvR 56.1(c). Here, the Estate did not specifically controvert any of State Farm's factual assertions. Therefore, those facts are deemed admitted for the purposes of this motion. The Estate did include a "Statement of Material Facts to Which a Genuine Issue Exists" in its response to the motion (Docket No. 15 at 2). However, the Estate has listed primarily questions of law relating to the construction and legal effect of the insurance contract in question. *See Southall v. Farm Bureau Mut. Ins. Co.*, 632 S.W.2d 420, 421 (1982)("The construction and legal effect of written contracts are matters to be determined by the court, not by the jury, except when the meaning of the language depends upon disputed extrinsic evidence.")

Reba Spangler ("the Estate"), filed suit against State Farm in the District Court of Sequoyah County. State Farm timely removed the case to this Court on December 3, 2007. The Estate is suing to recover the $100,000 limit of Ms. Spangler's uninsured motorist coverage. The Estate claims Fears was an uninsured motorist whose actions in killing Ms. Spangler fall within the insurance policy's coverage.

State Farm filed the instant motion for summary judgment on April 24, 2008, arguing that based on the undisputed facts, Fear's actions: (1) were not an "accident"; and (2) did not arise out of the "operation, maintenance, or use of an uninsured motor vehicle."

## DISCUSSION

**A.     Summary Judgment Standards**

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In making the summary judgment determination, the Court examines the factual record and draws reasonable inferences therefrom in the light most favorable to the non-moving party. *Simms v. Oklahoma*, 165 F.3d 1321, 1326 (10th Cir. 1999).

Under Rule 56(c), the moving party has the initial responsibility to show that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If this requirement is met by the moving party, the burden shifts to the nonmoving party to make a showing sufficient to establish that there is a genuine issue of material fact regarding "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

If the non-moving party can prove the existence of a genuine issue of material fact, the motion is defeated. An issue is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if proof thereof might affect the outcome of the lawsuit as assessed from the controlling substantive law. *Id.* at 249.

**B.     Choice of Law**

As an initial matter, this case raises a choice of law issue. Reba Spangler was an Arkansas resident who executed her insurance contract with State Farm in Arkansas, but she was shot and killed in Oklahoma. The Court must therefore determine which state's law governs the uninsured motorist provision in question

"It is well-settled that in 'making a choice of law determination, a federal court sitting in diversity must apply the choice of law provisions of the forum state in which it is sitting.'" *Electrical Distributors, Inc. v. SFR, Inc.*, 166 F.3d 1074, 1083 (10th Cir. 1999) (quoting *Shearson Lehman Bros., Inc. v. M & L Inv.*, 10 F.3d 1510, 1514 (10th Cir.1993)). The Court therefore applies Oklahoma choice of law provisions to determine which substantive law to apply.

With respect to contracts for motor vehicle insurance, the Oklahoma rule is that:

> The validity, interpretation, application and effect of the provisions of a motor vehicle insurance contract should be determined in accordance with the laws of the state in which the contract was made, unless those provisions are contrary to the public policy of Oklahoma, or unless the facts demonstrate that another jurisdiction has the most significant relationship with the subject matter and the parties.

*Bohannan v. Allstate Ins. Co.,* 820 P.2d 787, 797 (Okla. 1991); *see also Burgess v. State Farm Mut. Auto. Ins. Co.,* 77 P.3d 612, 613 (Okla. Civ. App. 2003)(explaining how the *Bohannan* rule is a slight modification of the more general *lex loci contractus* rule which is codified as Okla. Stat tit.

4

15, § 162).

In this case, the contract was entered into in Arkansas, so absent any overriding Oklahoma public policy or determination that Oklahoma has the most significant relationship to this case, Arkansas law must apply. In this case, the Court is aware of no Oklahoma public policy that would be violated by an application of Arkansas law, and the parties have not argued that any such policy exists. And this case's only relationship with Oklahoma arises out of the fact the shooting took place in Oklahoma. Neither party argues that Oklahoma has the most significant relationship with the case, and the Court cannot conclude that it does based on the sole fact that the shooting occurred on Oklahoma soil.

The Estate argues that the policy, because it states that it covers accidents and losses that occur "in the United States of America, its territories and possessions or Canada," specifies a place of performance. Therefore, the Estate argues that Oklahoma law should apply. Even assuming that the contract did specify a place for performance, the Estate bases its argument on the incorrect assumption that Okla. Stat tit. 15, § 162 applies to this case.[2] That statute, of course, applies to contracts in general, but the *Bohannan* court specifically held that motor vehicle insurance contracts are a unique type of contract that require a more specialized rule. Therefore, the *Bohannan* rule applies, and it makes no allowances for a "place of performance" analysis — except to the extent that the place of performance might be relevant to the "most significant relationship" analysis.

Regardless, the Court does not read the contract in question as specifying a place of performance. The contract simply places a limitation on the geographic area within which accidents

---

[2] Okla. Stat tit. 15, § 162 reads: "[a] contract is to be interpreted according to the law and usage of the place where it is to be performed, or, if it does not indicate a place of performance, according to the law and usage of the place where it is made."

or losses will be covered. Such a contract provision does not constitute a specification of a "place of performance" in the usual sense, and thus does not impact the Court's "most significant relationship" analysis.

The Court therefore remains convinced that Arkansas law should apply,[3] and accordingly, applies that state's law.

**C.  Whether the Shooting Arose Out of the Operation, Maintenance, or Use of an Uninsured Motor Vehicle**

The shooting is only covered by the insurance contract's uninsured motorist provision if Ms. Spangler's death was "caused by an accident arising out of the operation, maintenance, or use" of a motor vehicle. This raises two questions: (1) whether the shooting was an "accident"; and (2) whether the shooting arose out of the operation, maintenance, or use of a motor vehicle. The Court addresses the second question first.

The Arkansas Supreme Court has held that the term "arising out of," when used in the context of an uninsured motorist provision, means "causally connected with"— a phrase much broader than "proximately caused by," *State Farm Mut. Auto. Ins. Co. v. LaSage*, 559 S.W.2d 702, 703 (Ark. 1978), but less than "but-for" causation. *Hisaw v. State Farm Mut. Auto. Ins. Co.*, 122 S.W.3d 1 (Ark. 2003).

In the case of *Hartford Fire Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 574 S.W. 2d 265 (Ark. 1978), the Arkansas Supreme Court applied the "causally connected with" standard in the context of an insured motorist provision. In that case, two children were playing in a recreational vehicle parked beside a house. The children began playing with a loaded .22 caliber pistol that was

---

[3]The Court would also note that Plaintiff, in his response, concedes that "it doesn't appear to make much difference which law the Court chooses to apply in this case." (Docket No. 15 at 13).

kept stored in the vehicle. The gun accidentally discharged, killing one of the children. After Hartford paid out a settlement under a homeowner's insurance policy, Hartford sought contribution from State Farm, the motor vehicle insurer. The trial court found that Hartford was not entitled to indemnity from State Farm because the shooting was not "causally connected with" the operation of the automobile and thus "did not arise out of the ownership, maintenance or use" of the vehicle as required by State Farm's policy. The Arkansas Supreme Court affirmed, noting that:

> As to causation, the accident could just have easily occurred in a field, in the driveway, or in a hunting lodge. The fact the person discharging the pistol was inside the vehicle at the time of this accident does not make the injury one "arising out of the ownership, maintenance, or use" of the camper. Consequently, appellee's policy provided no coverage in this situation.

*Id.* at 267.

In *Carter v. Grain Dealers Mut. Ins. Co.,* 660 S.W. 2d 952 (Ark. Ct. App. 1983), two men were riding home from a party together in a car. The passenger was highly intoxicated, and at some point, the driver pulled over to the side of the road to allow the passenger to vomit. After vomiting, the passenger grabbed a gun from under the car seat and began shooting at the driver. Both driver and passenger ended up dead from gunshot wounds. After the driver's family sought recovery under the driver's uninsured motorist insurance, the Arkansas Court of Appeals upheld the trial court's granting of summary judgment in favor of the insurance company. The Court of Appeals noted that,

> "there must be a causal connection between the injury and the operation of the vehicle for there to be coverage. The only connection between the death of Mr. Carter and the use of the vehicle is that Mr. Kight and Mr. Carter happened to be in the automobile when the shooting occurred. They could have just as easily been outside the vehicle."

*Id.* at 953. Like *Hisaw, Carter* establishes that the mere existence of a motor vehicle at the scene of a shooting does not establish the requisite causal connection between an injury and the operation of

the motor vehicle; there must be something more.

The Estate points to *Hisaw v. State Farm Mut. Auto. Ins. Co.*, 122 S.W.3d 1 (Ark. 2003) in support of its contention that summary judgment would be improper. In *Hisaw*, the Arkansas Supreme Court examined whether an uninsured motorist provision covered an injury suffered by a volunteer firefighter who was injured by an inadvertently slammed van door while at the scene of an automobile accident. The intoxicated driver of the van had lost control of the vehicle and run off the road into a ditch. Hisaw, a volunteer firefighter, was called to the accident scene. After the paramedics removed the driver and passenger from the van, Hisaw attempted to retrieve the vehicle's registration information which was located on the van's floor. As he was leaning into the van through the middle back door, the door swung shut due to the force of gravity and hit Hisaw in the back, causing injuries to his neck and spine. Hisaw sued, arguing that his injury was proximately caused by Stuthers' drunken driving and the ensuing car wreck. The trial court granted summary judgment in favor of the insurance company, noting that too much time had passed between the accident and the injury to Hisaw for Hisaw's injury to be causally linked to the use of the van. The Arkansas Supreme Court reversed, concluding that summary judgment was improperly granted, as the trial court had based its decision on the amount of time that had passed between the accident and the injury to the firefighter, and there was a factual dispute as to exactly how much time had passed. The *Hisaw* Court based its conclusion on the principle that "[t]he construction and legal effect of written contracts are matters to be determined by the court, not by the jury, except when the meaning of the language depends upon disputed extrinsic evidence." *Id.* at 8 (quoting *Southall v. Farm Bureau Mut. Ins. Co.*, 632 S.W.2d 420, 421 (1982)). Because there was disputed extrinsic evidence, the *Hisaw* Court ruled that the factual disputes should have been decided by a jury prior to the trial

court's deciding the construction and legal effect of the contract as a matter of law.

Unlike *Hisaw*, the essential facts of this case are undisputed. The Estate's reliance on *Hisaw* is therefore misguided. Because the essential facts of this case are undisputed, the Court may properly determine whether, as a matter of law, the shooting in question "arose out of the operation, maintenance, or use" of Daniel Hawke Fears' uninsured pickup truck. The question then, is whether the shooting was "causally related" to Fears' use of his pickup truck.

The Court's analysis is guided by *Hartford Fire* and *Carter*. Following the reasoning of those courts, Ms. Spangler's death did not arise out of the operation, maintenance, or use of Fears' truck. Fears' did not shoot Ms. Spangler while driving his truck, or even from the truck while the truck was parked. And Ms. Spangler was never in contact with Fears' truck — she was shot while standing in the parking lot of a car dealership. The only connection between the death of Ms. Spangler and the use of the truck is that Fears used the truck to transport himself to and from the scene of the crime. But that fact alone does not create the requisite causal connection. For example, in *Carter*, the motor vehicle in that case transported both shooters (who were both also victims) to the scene of the crime; indeed, the *vehicle itself* was the scene of the crime. However, even under those facts, the Arkansas court did not find the requisite causal connection. Therefore, under these more benign facts, the Court cannot conclude that Ms. Spangler's death arose out of Fears' use of his pickup truck. Ms. Spangler's death was instead caused by an "independent or intervening cause wholly disassociated from, independent of, and remote from the use of an automobile." *See O'Neal v. Fidelity and Guar. Ins. Co.,* 2007 WL 1747146, 3 (N.D. Okla. 2007) (quoting *Hite v. Hartford Acc. & Indem. Co.*, 344 S.E.2d 173, 176-177 (S.C. Ct. App.1986)).

Therefore, as a matter of law, Ms. Spangler's death did not "arise out of the operation,

maintenance, or use" of Fears' uninsured pickup truck. Because this holding is dispositive of the Estate's claim, the Court does not reach the question of whether Fears' shooting of Ms. Spangler was an "accident."

## **CONCLUSION**

For the reasons set forth above, Defendant State Farm Mutual Automobile Insurance Company's Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED this 7th day of July, 2008.

_____
James H. Payne
United States District Judge
Eastern District of Oklahoma